In re David C. PETERSON and Carol L. Peterson, Plaintiffs,

v.

THORP CREDIT AND THRIFT COMPANY, Defendant.

Arising in or Related to Bankruptcy Case of David C. Peterson and Carol L. Peterson, Debtors.

Adv. No. 4–82–423(O).
Bankruptcy No. 4–81–295(O).

United States Bankruptcy Court, D. Minnesota, Fourth Division.

Jan. 28, 1983.

Jack L. Prescott, New Brighton, Minn., for plaintiffs, David C. Peterson and Carol L. Peterson.

Donald H. Seel, Richfield, Minn., for defendant, Thorp Credit and Thrift Co.

MEMORANDUM OPINION

KENNETH G. OWENS, Bankruptcy Judge.

This matter is before the court on the motion of defendant to dismiss as untimely the complaint of the plaintiff seeking under 11 U.S.C. Section 522(f)(2) to avoid the fixing of a lien on exempted household goods, furnishings, and appliances. The facts are not disputed and the parties through their counsel have submitted the matter on brief for final determination consenting to the jurisdiction and determination of this court subject to right of appeal.

Plaintiffs became indebted to defendant in August 1979 evidenced by a note and secured by a security interest in the plaintiff's household goods, furnishings, and appliances. The borrowing and the security interest antedated the proscription of such security devices as now found in Minnesota Statute MSA Section 550.37, Subdivision 4. The debtors subsequently on February 17, 1981 filed their petition for relief under Chapter 7 of the Bankruptcy Code and in that proceeding claimed an exemption with respect to the subject property which by local rule, absent objection, became final. In due course on June 18, 1981, plaintiffs received their discharge in bankruptcy. Thereafter and following discharge the defendant demanded surrender of the security property. The demand was refused and the complaint instituting this adversary proceeding was filed on August 26, 1982. The defendant contends the complaint is untimely because filed subsequent to the plaintiff's discharge.

Section 522 of the Bankruptcy Code, in addition to providing for the exemption of certain property, by Subsection (f) permits the debtor to avoid the fixing of such a lien on household furnishings, household goods, etc., as here, as follows:

"(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

It is apparent from the process which led to the adoption of the Bankruptcy Code including the inquiries made and the proceedings which occurred before the Commission on Bankruptcy Laws of the United States and through the evidence and proceedings in committee and otherwise within the Congress that a primary purpose of the Code was to permit the burdened debtor to achieve a fresh start. By the same token, it was recognized that the practice of taking blanket security interests in household necessities in general had an unduly coercive effect on debtors out of proportion to the value of the security and leading to improvident reaffirmations and payments following discharge. The history and purposes of the legislation are well canvassed in *In Re Pine,* 11 B.R. 595 (Bkrtcy.E.D. of Tenn. 1981). As indicated in *Pine,* pgs. 598–599, the congressional purpose encompassed the avoidance of such liens to the end that the debtor would accomplish a fresh start "with adequate possessions to begin his fresh start." The innovative creation of the new right of avoidance of such liens is accordingly close to the core of the purposes of the Code itself and thus entitled to a liberal application.

The statute creates the right but does not prescribe the form of its assertion or the time within which it must be made. The drafters of the Code quite evidently intended to leave the form of assertion of the right to rule. The right being new could only be indirectly affected by the bankruptcy rules which antedated the Code. As an aside, it seems apparent that the assertion of the right could take a number of forms depending on the formality perceived to be necessary. Thus the avoidance might be accomplished simply by claim upon the schedules with notice to the affected party, by motion as contemplated in proposed Bankruptcy Rule 4003(d) or, as seems contemplated in the preexisting Bankruptcy Rule 701, by a complaint in an adversary proceeding. In any event, the matter of avoidance is merely a matter of procedure and is not provided in the statute. Here the debtors made a claim of avoidance upon their schedules and have complied with

Rule 701, if that be applicable to this new right, by filing a complaint.

Nor does the statute expressly prescribe a time within which the debtors must assert their rights. Nor can such a limitation be found by statutory implication.

It was suggested in *In Re Porter,* 11 B.R. 578 (W.D.Okla.1981) that 11 U.S.C. Section 522(i)(1), which permits a debtor who avoids a transfer of property already in the hands of a lien holder to recover that property, is conditioned upon a requirement that the debtor commence action before the case is closed or dismissed. See Section 550(e). *Porter* would imply from such limitation that the assertion of debtor's right to avoid fixing of such a lien on property already in the debtor's possession is governed by the same statutory rule. However, the inference is not justified. The Advisory Committee's note to the proposed bankruptcy rules states with respect to Rule 4003(d) that proceedings within the scope of this subdivision are distinguished from proceedings brought by the trustee to avoid transfers. The latter are classified as adversary proceedings by Rule 7001. As pointed out in *In Re Swanson,* 13 B.R. 851 (Bkrtcy.Id. 1981):

"Section 550 prescribes the liability of a transferee of an avoided transfer, and annunciates the separation between the concepts of avoiding a transfer and recovery from the transferee . . . ."

■ A trustee's right to avoid a lien and to recover from a transferee ends at the time a case is closed, being so limited by 11 U.S.C. Section 546. For the reasons pointed out in *Swanson* since Section 522 makes no reference to Section 546, the restrictions of 546 have no application to Section 522.

Section 522(i)(1) does provide that if the debtor "avoids a transfer" under Subsection (f) or (h) the debtor may recover in the manner prescribed by and subject to the limitations of Section 550 of the Code. Noting the distinction between avoidance and recovery of property, the section quite evidently relates to the actual recovery of property in the hands of a third party and, in that instance, directs that any action or proceeding to accomplish such is limited by the termination of the case. The section has no such limiting effect with respect to the simple avoidance of the "fixing of a lien" with respect to property in the possession of the debtor under Section 522(f). Nor, recognizing the distinction between avoidance and recovery, no reason exists for extension of the subsection by implication.

Even absent any ground for "implication" of a statutory limitation, some early cases express the view that by broader implication of purpose a limit should be fixed as of the time of discharge; *In Re Adkins,* 7 B.R. 325 (Bkrtcy.S.D.Cal.1981). Such implication is based merely on the assumption that it serves the interest of the debtor to preserve an opportunity for reaffirmation of debt, that opportunity expiring on the entry of discharge. However, as pointed out in *In Re Swanson,* supra, there is no logical tie between reaffirmation of debt and the independent personal right of the debtor to avoid liens on his necessary exempt personal property. As stated in *Swanson,* pg. 853:

"The fact that it may be in a debtor's best interest to avoid liens under 522(f) before his time to reaffirm passes, is not a valid reason for saying he must do so before discharge or forfeit the right to do so. In most cases, the exemption covers the security interest in its entirety and no need to reaffirm arises."

■ Examination of the existing bankruptcy rules fails to disclose any time limitation applicable to the debtor's exercise of his newly created right under Section 522(f) to avoid the afixing of liens on his otherwise exempt personal property. Nor has such a limitation been attempted by way of a generally applicable local rule. Certainly, I know of no authority in this court to apply a limitation on an ad hoc or case by case basis. See *In Re Swanson,* supra, at pg. 854. Absent limitation, no reason appears why debtors may not assert such a right at any time.

■ The defendant in this case was aware from the schedules filed by the debtors that they intended not to be bound by the debtors' lien on their exempt property. It took no action in the bankruptcy case to

attempt enforcement of its lien or claim of title or possession of the property. Its post-discharge demand was rebuffed and this adversary proceeding ensued. There has been no substantial prejudice as that term is understood in the case law. Accordingly, there is no issue of laches in this case.

The *Adkins* case has been superseded, the law in the Ninth Circuit is established in *In Re Yazzie*, 24 B.R. 576 (US Bankruptcy Appellate Panel, 9th Cir., 1982). That court in accordance with the clear weight of authority stated:

"No provisions of the Code or rules (present or proposed) have established a time limit for bringing an action to avoid a lien under 11 U.S.C. Section 522(f)(2)....

We are pursuaded ... that a time limit does not exist for the bringing of such actions."

I am equally pursuaded and, consonant with the decision of Judge Bullis (having jurisdiction in Minnesota and North Dakota) in a case arising in North Dakota, *In Re Schneider*, 18 B.R. 274 (North Dakota 1982), find that no time bar exists to the complaint in the present adversary proceeding.

On the submission of the parties, there being no ground to prevent the avoidance of the lien, the motion to dismiss should be denied and on the merits the plaintiffs are entitled to avoid the fixing of the lien claimed by defendant on the plaintiff's exempt household goods, furnishings, appliances, and musical instrument.

The foregoing shall constitute the findings of fact and conclusions of law of this court pursuant to Bankruptcy Rule 752.

Counsel for the plaintiffs may prepare and submit an appropriate form of order and judgment on notice to the defendant as to form.