**Bonnie BENOIT, Appellant,**

v.

**Robert M. LUND, Appellee.**

No. 2:04–CV–147.

United States District Court, D. Vermont.

Nov. 24, 2004.

Deborah Thompson Bucknam, St. Johnsbury, VT, for Appellant.

Gleb Glinka, Glinka & Schwidde, Cabot, VT, for Appellee.

## *OPINION AND ORDER*

SESSIONS, Chief Judge.

Creditor Bonnie Benoit appeals a May 6, 2004 decision of the United States Bankruptcy Court for the District of Vermont (Brown, J.). The bankruptcy court granted appellee Robert M. Lund's ("Lund") motion for summary judgment allowing him to avoid a pre-judgment writ of attachment as a preference under 11 U.S.C. § 547(b).[1] The bankruptcy court also granted Lund summary judgment on his claim that Bonnie Benoit's ("Benoit") counter-complaint was time-barred. Benoit

---

**1.** All references to statutes are to Title 11 of the United States Code ("the Bankruptcy Code") and all references to rules are to the Federal Rules of Bankruptcy Procedure ("the Bankruptcy Rules"), unless otherwise noted.

challenges both of these decisions.[2] For the reasons set forth below, the Court AFFIRMS the bankruptcy court's decision.

### Factual Background

The following facts are undisputed. Benoit and Lund lived together in Lund's home in Concord, Vermont from July 1993 until November 2000, when their relationship ended. On May 31, 2002, Benoit filed a complaint against Lund in Vermont Superior Court in Essex County alleging, *inter alia*, breach of contract, fraudulent misrepresentation and intentional infliction of emotional distress. On the same day, pursuant to Vt. R. Civ. P. 4.1, Benoit obtained an *ex parte* pre-judgment writ of attachment against Lund's homestead in the value of $100,000. This writ of attachment was recorded in the Concord Land Records on June 20, 2002.

On August 7, 2002, Lund filed for Chapter 7 bankruptcy. As a result, the state court action was stayed pursuant to 11 U.S.C. § 362. In his Statement of Financial Affairs, Lund disclosed the pending state litigation, but failed to list the writ of attachment against his homestead.[3] Lund listed a $7,276.63 debt to Benoit as an unsecured nonpriority claim in his Schedule F.

In his Schedule A, Lund valued his homestead at $93,300.00. This was the grand list value of the property for the Town of Concord. In his Schedule D, Lund disclosed a mortgage on the property to America's Wholesale Lender securing a debt of $57,786.13. Lund exempted the equity in his homestead in his Schedule C, pursuant to Vt. Stat. Ann. tit. 27, § 101.

As Benoit was listed as a creditor, she was duly served with the Notice of Bankruptcy Case. This notice informed Benoit that November 5, 2002 was the deadline to file a complaint objecting to discharge of the debtor or to determine dischargeability of the debt. Nevertheless, Benoit did not enter an appearance, move for relief from the stay of her state court action or indicate her intention to obtain a judgment lien to perfect her pre-judgment writ of attachment.

On November 8, 2002, Lund received a discharge of his debts under 11 U.S.C. § 727. On November 19, 2002, the bankruptcy court issued a final decree and closed the case. On November 20, 2002, Lund conveyed his homestead at an arm's length sale to Mary M. Garvey for $130,000.

Almost seven months later, on June 10, 2003, Benoit filed a motion with the bankruptcy court requesting that the court modify the injunctive provisions of 11 U.S.C. § 524(a) to allow Benoit to resume litigation in state court to convert the *ex parte* pre-judgment writ of attachment to a judgment lien against Lund's homestead. Lund opposed Benoit's motion and filed a post-discharge motion under 11 U.S.C. § 350(b) to reopen the bankruptcy case in order to prosecute a motion to avoid the writ of attachment under 11 U.S.C. § 522(f)(1)(A) as an impairment of his homestead exemption, or in the alterna-

---

**2.** Although Benoit makes no argument specifically addressing the issue, she also contests the bankruptcy court's denial of her Request to Take Judicial notice. The bankruptcy court denied this request without comment. In light of the bankruptcy court's other rulings, the request was properly denied as it was moot.

**3.** Question 4(b) requires the debtor to "[d]escribe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case."

tive, as a preferential transfer under 11 U.S.C. § 547(b).

On July 21, 2003, the bankruptcy court ordered that the case be re-opened pursuant to 11 U.S.C. § 350(b). The bankruptcy court also granted Benoit leave to file a separate adversary proceeding against Lund to determine the dischargeability of her debt. Benoit appealed the order granting Lund's motion to reopen.

On April 5, 2004, this Court issued a decision upholding the bankruptcy court's decision to reopen the case. Order, *Benoit v. Lund*, (Apr. 5, 2004) (No. 2:03–CV–233). First, the Court granted Benoit leave to appeal the interlocutory order. The Court then held that Lund had standing to contest the attachment under § 522(f) because he possessed an interest in the property at the time the prejudgment attachment was fixed. The Court also held that the bankruptcy court had not abused its discretion by reopening the case as Benoit had not demonstrated that she had been prejudiced by this decision.

On January 12, 2004, while the bankruptcy court's order of July 21, 2003 was on appeal, the bankruptcy court issued an order consolidating Lund's and Benoit's claims in a single adversary proceeding with Benoit's claim for non-dischargeability appearing as a counter-claim. The parties filed joint stipulated facts on February 23, 2004.

Lund moved for summary judgment on his motion to avoid the writ of attachment under 11 U.S.C. § 522(f)(1)(A) as an impairment of his homestead exemption or, in the alternative, as a preferential transfer under 11 U.S.C. § 547(b). Lund also filed a motion to dismiss Benoit's claim for non-dischargeability as late-filed under Bankruptcy Rule 4007(c).

On May 5, 2004 the bankruptcy court issued a decision granting Lund's motion for summary judgment on his motion to avoid the writ of attachment as a preferential transfer under 11 U.S.C. § 547(b). The bankruptcy court did not reach Lund's alternative motion to avoid the attachment under 11 U.S.C. § 522(f)(1)(A) as it was moot. The bankruptcy court also decided, *sua sponte*, to treat Lund's motion to dismiss Benoit's claim for non-dischargeability as a motion for summary judgment. The bankruptcy court had before it stipulated facts and attached exhibits that included undisputed facts outside the pleadings. Considering these undisputed facts, the bankruptcy court dismissed Benoit's claim for non-dischargeability as late-filed. Benoit has appealed the May 5 decision.

### Jurisdiction and Standard of Review

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a) which grants district courts authority to hear appeals from final judgments, orders, and decrees of bankruptcy courts entered in core proceedings. 28 U.S.C. § 158(a)(1); *see also* § 157(b)(2) (defining "core proceedings").

A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. A bankruptcy court's conclusions of law are reviewed de novo, and its findings of fact are not set aside unless they are clearly erroneous. *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988 (2d Cir.1990).

Summary judgment is granted only if there is no genuine issue as to any material fact and the moving party has shown that it is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056 (applying Fed.R.Civ.P. 56 to bankruptcy proceedings); *see also N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel LLC*, 293 F.3d 550, 554

(2d Cir.2002). The evidence is reviewed in the light most favorable to the nonmoving party, with all ambiguities resolved and all reasonable inferences drawn in its favor. *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 61 (2d Cir.2000). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## *Discussion*

### A. Preferential Transfer under § 547(b)

██ Under 11 U.S.C. § 547(b), a transfer of an interest in the property of the debtor may be avoided as a preference if the transfer was: (1) to or for the benefit of a creditor; (2) for an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within 90 days of the filing of the petition; and (5) enabled the creditor to receive more than such creditor would otherwise receive in the Chapter 7 case. The undisputed facts show that: (1) Benoit sought the lien for her benefit; (2) she sought the lien to satisfy a pre-existing debt; (3) the bankruptcy case was a "no-asset" case and Lund was insolvent; (4) the lien was obtained and filed within 90 days before the filing of the petition; and (5) enforcement of the lien would have allowed Benoit to recover more than she would otherwise. Thus, it is clear that Benoit's pre-judgment writ of attachment satisfies all of the elements of § 547(b).

Benoit does not appear to contest the conclusion that the writ of attachment satisfies the statutory requirements established by § 547(b). Rather, Benoit argues that Lund failed to satisfy equitable requirements for the relief he sought. Benoit suggests that *Noble v. Yingling,* 37 B.R. 647 (D.Del.1984) establishes a non-exhaustive list of equitable factors that should be considered before allowing a debtor to avoid a judicial lien.

Lund responds that *Noble* considers only whether a debtor should be allowed to file an avoidance action after discharge. The Court agrees that this is the focus of *Noble. See* 37 B.R. at 650 (noting that "the emerging rule is that a post-discharge lien avoidance *action* will be barred only if the debtor's delay has resulted in ... prejudice") (emphasis added). Thus, by raising the *Noble* factors, Benoit is asking the Court to revisit an issue that she already appealed unsuccessfully. The Court has already held that Judge Brown was justified in reopening the case.

██ Moreover, even if the *Noble* factors are considered, these factors do not favor Benoit.

██ The *Noble* factors are:
1) vigor with which the judgment creditors pursued the debtors prior to the filing of the bankruptcy petition, 2) communication of positions by and between debtors and judgment creditors after filing of the petition and prior to discharge, 3) motivating cause of the failure to file lien avoidance complaint prior to discharge, 4) length of time between discharge and filing of lien avoidance complaint, 5) reason for the delay in filing of lien avoidance complaint, 6) prejudice to the judgment creditors, and 7) good faith, or lack thereof, of the creditors. *Noble,* 37 B.R. at 649. Although Benoit did pursue Lund prior to the filing of the bankruptcy petition, she did not continue to pursue him after filing. In fact, Benoit did not even enter an appearance in the bankruptcy proceeding. Thus, the second factor weighs heavily in favor of Lund.

Benoit argues that Lund failed to file for lien avoidance prior to discharge because he wished to deceive the trustee about the

true value of his homestead. The uncontested facts do not support such a conclusion. Lund valued his property at the grand list value. Moreover, he realized less than the homestead exemption from the sale. If Benoit wished to contest the valuation of the house, she could have participated in the bankruptcy proceeding.

Benoit argues that, as Lund filed for lien avoidance seven months after discharge, the fourth and fifth factors favor her. This argument turns the facts upside down. As Judge Brown noted, the delay was caused by Benoit. Lund moved to reopen almost immediately after Benoit filed for relief from the post-discharge injunction.

The most important factor is whether Benoit was prejudiced by the delay. Benoit argues that she has been prejudiced because she was "deprived of her right to litigate the true value of the house ..., is now faced with litigation involving the current owner over the nature and extent of her lien ..., [and] is faced with the loss of her investment due to the fraud of [Lund]." Appellant's Br. at 8 (Doc. 5). These arguments are not persuasive. As the *Noble* court noted, "because a creditor is normally aware that his security interest is subject to avoidance by a bankrupt debtor, delay in filing an avoidance action is not in and of itself prejudicial." *Noble*, 37 B.R. at 651. Thus, it was Benoit's failure to appear in the bankruptcy proceeding that has deprived her of the opportunity to litigate the value of the house and has led to the prospect of litigation with the new owner. Moreover, as the writ of attachment satisfies the statutory elements of § 547(b), it is a straightforward application of bankruptcy law, rather than fraud, that has lead to the loss of Benoit's investment.

Finally, Benoit asks the Court to weigh her allegations regarding Lund's bad faith. Many of these allegations form the basis of her state action against Lund. Benoit also alleges that Lund deliberately misrepresented the nature of his debt to her in his bankruptcy filing. Even if these allegations were accepted as true, they do not provide much support for Benoit. None of Lund's alleged actions deprived Benoit of an opportunity to contest these issues in the bankruptcy proceeding. It is undisputed that Benoit was provided notice that Lund's debt to her might be discharged in the bankruptcy proceeding. Thus, even if the equitable considerations outlined in *Noble* did apply here, the bankruptcy court's ruling would stand.

There are eight statutory exceptions to the avoidance of preferential transfers under 11 U.S.C. § 547(c). Benoit has not argued that any of these exceptions apply. The Court has considered them independently and has concluded that they do not apply to this case. Thus, as the writ of attachment satisfies the elements of § 547(b), the writ may be avoided as a preferential transfer.

**B. Dismissal of the Counter–Claim**

Judge Brown dismissed Benoit's counter complaint for non-dischargeability on the ground that it was time-barred under Bankruptcy Rule 4007(c). This ruling was based on a straightforward application of Rule 4007(c) and the Supreme Court's recent decision in *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). Under Rule 4007(c), a creditor has "60 days after the first date set for the meeting of creditors" to file a complaint objecting to the debtor's discharge. In *Kontrick*, the Supreme Court held that "[t]ime bars ... generally must be raised in an answer or responsive pleading." *Kontrick*, 124 S.Ct. at 917. Here, it is uncontested that Benoit's claim is untimely and that Lund raised this defense in his answer to the counter complaint.

■ In response, Benoit argues that *Kontrick* established equitable exceptions to the 60 day limit. The *Kontrick* Court, however, explicitly stated that it was not reaching the issue of equitable exceptions to the rules. *See id.* at 916 (noting that "[w]hether the Rules, despite their strict limitations, could be softened on equitable grounds is ... a question we do not reach") (footnote omitted). The Courts of Appeals are divided on the issue of whether there are equitable exceptions to Rule 4007(c). *See id.* at 916 n. 11 (discussing this circuit split). Thus, as Judge Brown noted, the relevant authority on this issue is *In re Benedict,* 90 F.3d 50 (2d Cir.1996). In that case, the Second Circuit held that Bankruptcy Rule 4007(c) is subject to only three equitable defenses: "waiver, estoppel and equitable tolling." *In re Benedict,* 90 F.3d at 54.

■ First, it is clear that Lund has not waived the defense as he raised the issue in his answer. When determining whether to apply equitable tolling, the Court must consider whether Benoit "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 80–81 (2d Cir.2003) (quotation marks and citation omitted). Once again, it is clear that the doctrine does not apply. In the Notice of Bankruptcy Case, Benoit received specific notice of the deadline established by Rule 4007(c). Nevertheless, she failed to act. Thus, the uncontroverted facts show that she did not act with the reasonable diligence required for equitable tolling.

■ The final defense, equitable estoppel, is also inapplicable. Equitable estoppel requires active deception or induced reliance that prevents a party from bringing a claim. *See Pearl v. City of Long Beach,* 296 F.3d 76, 81–83 (2d Cir.2002). Benoit alleges that Lund made a variety of misrepresentations. However, these did not concern the deadline established by Rule 4007(c). Rather, the alleged misrepresentations concerned the nature of Lund's debt to her. As Judge Brown noted, these alleged misrepresentations were a matter of public record and Benoit had an opportunity to object to them. Thus, equitable estoppel does not apply.

■ Benoit also argues that the bankruptcy court's order entered July 21, 2003, is binding on the issue of timeliness as the law of the case. This suggestion is wildly off the mark. The bankruptcy court simply granted Benoit leave to file an adversary proceeding to determine the dischargeability of her debt. The July 21 order did not reach the merits of her claim and is not binding on the issue of timeliness. Moreover, the bankruptcy court's conclusions of law are reviewed de novo. *See Shugrue,* 922 F.2d at 988. So, even if Judge Brown had ruled on the issue in her July 21 order, this Court would not be bound by that ruling.

Overall, the undisputed facts clearly establish that Benoit's claim was late filed under Rule 4007(c). The facts also show that none of the three equitable defenses established by *In re Benedict* apply here. Thus, Benoit's counter claim was properly dismissed as late-filed.

### Conclusion

For the foregoing reasons, the bankruptcy court's decision is AFFIRMED.